Barney, J.,
delivered the opinion of the court:
The petition in this case alleges that on April 6, 1900, the petitioner submitted to Capt. W. N. Robinson, jr.,.assistant quartermaster, U. S. Army, certain proposals for- furnishing lighterage and stevedoring for Government supplies and stores arriving at Cape Nome, Alaska; and further alleges that on April 19, 1900, Captain Robinson and the petitioner made a contract in regard to such lighterage in the following terms:
“ Office of the CONSTRUCTION Quartermaster,
“ CORNER First Avenue and Yesler Way,

“Seattle, Wash., April 19, 1900.

“ Mi1. E. W. Johnston, Seattle, Wash.
“ Sir : In reply to your proposal of the 6th instant to furnish lighterage and stevedoring for Government stores at Capt Nome, Alaska, I have the honor to accept said proposal as follows, with the subjoined conditions:
“ Hay and straw, 70 tons, at $6 per ton.
“ Grain, 40 tons, at $6 per ton.
“ Building materials, 35 tons, at $6 per ton.
“ Groceries, etc., 220 tons, at $6 per ton.
“ Miscellaneous merchandise, 350 tons, at $6 per ton.
“ Lumber, lightered ashore, not rafted, $7 per thousand (2,200 tons).
“ Coal, 1,500 to 2,000 tons, at $4 per ton, in sacks.
“Animals, 20, at $5 per head.
“ The Government reserves the right to handle and lighter such part of the Government freight on any vessel as may be convenient, with its own appliances in each case.
“ You will be required to furnish sufficient lighterage and tugs on twenty-four hours’ notice by the local or ship’s quartermaster, to expeditiously and continuously discharge any *79 given cargo or part thereof designated by the local or ship’s quartermaster.
“ That all stores discharged by you shall be placed at a point on the beach designated by the local quartermaster, out of reach of high tide, and neatly piled so that they may be protected from the weather by paulins, and in such manner that the quantities may_ be readily tallied.
• “ That the vouchers for such service shall be verified by the local quartermaster and payment shall be made at this office for said service, the rates per ton being for net tons of 2,000 pounds for general merchandise, and in gross tons of 2,24-0 pounds for coal, as determined by usual commercial and shipping custom.
“ Yery respectfully,
“ W. W. Eobinson, Jr.
“Gaft, and A. Q. il/., U. S. Army.
“ The above conditions are hereby accepted.
“E. W. Johnston.”
It should be here observed that no copy of the alleged proposal is given in the petition, and that the foregoing letter of Captain Eobinson, together with the acceptance by the claimant of the conditions therein stated, alone constitute the alleged written contract relied upon; but what the proposals of the claimant were, which were accepted by Captain Eobin-son, do not appear.
The petition further states that in accordance with this contract the petitioner discharged certain transports therein named; that during the months of September and October, 1900, (Government) supplies arrived on certain steamers which the petitioner was not permitted to handle, although he notified the quartermaster that he was in readiness to do so.
The petition also sets up an interview between the petitioner and General Eandall in reference to this contract for lighterage, in which the latter said to the petitioner, “All right; go ahead and get all the tugs and lighters together that you can, and be ready to handle these ships as fast as possible; ” and that pursuant to such directions he went ahead, hired several tugs, and paid out considerable sums of money in various ways in preparation for the performance of such service. That after such preparations he offered to *80 do the lighterage for the vessels arriving freighted with Government stores, but was not permitted to do so.
It also appears from the petition, that these vessels which the petitioner was not permitted to serve were private vessels which the Government had chartered for its service on account of its inability to handle with its own vessels the large amount of freight necessary to be carried, and that the lighterage of these vessels was done by private parties and not by the Government. Judgment is prayed for the damage thus sustained by the petitioner in the sum of $4,181.91.
The defendant demurred to this petition on the ground that it does not state a cause of action, and the issue of law thereby joined is before us for decision.
It is clear that the reply letter of the Quartermaster set out in the petition does not constitute a valid written contract under the provisions of section 3144 of the Revised Statutes, hereinafter quoted. While it may be admitted that a written contract may be made out under that section by letters of correspondence between the parties, we think it hardly needs argument or authorities to show that the letter of one party in reply to another not given does not make out such contract, and particularly so when, as in this case, the reply letter on its face shows it can not be fully interpreted without the other. If the loss of the first letter had been alleged, and the substance of its content; given, that would, perhaps, have been sufficient; but to give only one fragment of a correspondence does not make, a contract in writing by letter within the statute of frauds, or within the section citech-(13 Am. & Eng. Encyc. of Law, 254.)
Tt should also be noted that the letter omitted from the correspondent» is the claimant’s own letter, and it is well settled that greater certainty of pleadings is required when the facts lie in the knowledge of the party pleading. (Bliss Code Pleading, sec. 223 et seq.; 18 Am. & Eng. Encyc. Law, 500.)
But even if it is admitted that this one reply letter is a written contract under the statute, there is no allegation in the petition that it has not been fully performed by both parties. In fact, that it has thus been fully performed is *81 the fair inference from the statements therein contained, and its consideration has nothing to do with this case only as it may explain the verbal contract relied upon.
Section 3744 of the Revised Statutes is as follows:
“ It shall be the duty of the Secretary of War, of the Secretary of the Navy, and of the Secretary of the Interior to cause and require every contract made by them severally on behalf of the Government, or by their officers under them appointed to make such contracts^ to be reduced to writing-, and signed by the contracting parties with their names at the end thereof; a copy of which shall be filed by the officer making and signing the contract in the Returns Office of the Department of the Interior as soon after the contract is made as possible, and within thirty days, together with all bids, offers, and proposals to him made by persons to obtain the same, and with a copy of any advertisement he may have published inviting bids, offers, or proposals for the same. All the copies and papers in relation to each contract shall be attached together by a ribbon and seal, and marked by numbers in regular order, according to the number of papers composing the whole return.”
' It has been repeatedly held by this court and by the Supreme Court that this statute is mandatory, and that any contract made contrary to its provisions is absolutely void. (Lindsley v. United States, 4 C. Cls. R., 359; Henderson v. United States, ibid., 75; Clark v. United States, 95 U. S. R., 539; South Boston Works v. United States, 18 C. Cls. R., 165; 118 U. S. R., 37.)
If this rule is applicable in the determination of what are alleged to be written contracts, then a fortiori it is applicable to a somewhat indefinite interview between the claimant and an army officer.
It clearly appears from the petition that all of the preliminary expenses incurred by the claimant, and for which he seeks to recover in this action, were made by him pursuant to this verbal contract, if it can even be called that, which is very doubtful.
If it is admitted that the circumstances of this case made an emergency contract permissible within section 3709, Revised Statutes, it has been frequently decided that that sec *82 tion only relieves from the necessity of advertising for proposals in cases of public exigency, and does not relieve from the necessity of having such contracts in writing. (Cobb v. United States, 18 C. Cls. R., 514; Clark v. United States, 95 U. S. R., 539.)
This case is clearly distinguishable from that class of cases where recovery is sought for the value of services rendered and accepted, or of articles actually purchased and used by the Government. It is well settled that in the latter class of cases recovery can be had upon quantum meruit or quantum 'oalebat,
In this case recovery is sought for the nonperformance on the part of the Government of a void executory contract, and such an action can not be sustained.
It is ordered that the demurrer be sustained with leave to the claimant to amend his petition within sixty days.